IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE

| | |
|---|---|
| **BROOKLYN T., THE STUDENT,** ) | |
| BY AND THROUGH ) | |
| HER PARENT, **RACHEL VANDERGRIFF,** ) | |
| ) | |
| **PLAINTIFFS.** ) | |
| ) | |
| VS. ) | No. _____ |
| ) | **JURY DEMAND** |
| ) | |
| **KNOX COUNTY BOARD OF EDUCATION** ) | |
| AND **KNOX COUNTY, TENNESSEE** ) | |
| ) | |
| **DEFENDANTS.** ) | |

# COMPLAINT

**COME THE PLAINTIFFS,** through counsel, submitting this Complaint and showing:

### I. PARTIES, JURISDICTION, AND VENUE

1. The Plaintiffs are Brooklyn T., a minor student born in 2003, who resides in Knox County with her parent, Rachel Vandergriff.

2. Defendant, Knox County Board of Education, is an agency of Defendant, Knox County, Tennessee, and it is vested with management and control of the County School System. Together, they are the ultimate policy-making body with

1

regard to policy determinations in the operation of the school system. The Defendants may be served with process through the Knox County Law Director, 400 West Main Street, Suite 612, Knoxville, Tennessee 37902.

3. This action arises out of the following Federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101, *et seq.*, amended by the Americans with Disabilities Act (ADA-AA) with an effective date of January 1, 2009; the Rehabilitation Act of 1973, §§ 504 and 505, as amended, 29 U.S.C.A. §§ 794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under § 504 to conform to the definition of "disability" under ADA-AA. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331.

4. Knox County Schools are the beneficiaries of Federal funding subject to Section 504 of the Rehabilitation Act, and are therefore covered by the Rehabilitation Act of 1973.

5. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the cause of action arose in Knox County and the Defendants may be found in Knox County.

## II. Facts

6. Brooklyn is currently a tenth-grade student in the Knox County school system. She has a "disability," as that term is used in the ADA and Section 504, because she has multiple medical impairments, including an intellectual disability, au-

2

Case 3:20-cv-00005-HSM-DCP   Document 1   Filed 01/06/20   Page 2 of 10   PageID #: 2

tism, hearing loss, sight limitations, cerebral palsy, and hearing loss. These impairments substantially limit Brooklyn in the major life activities of, *inter alia,* communicating (speaking and hearing), sight, hearing, and learning.

7. Brooklyn is mostly non-verbal. Throughout her education, Brooklyn has needed a reasonable accommodation of an assistive communication device along with speech-language services.

8. During her elementary school years, Brooklyn attended Dogwood Elementary and Brickey-McCloud Elementary, respectively. With the assistance of an aide, Brooklyn became proficient in using an assistive communication device known as a "DynaVox."

9. A DynaVox is a *voice output* touch-based device for Augmentative and Alternative Communication (AAC), also known as a "speech generating device" (SGD). It is durable, contains a naturally intuitive interface for users, contains speech output, and evolves as a child's communications needs change. It offers an audible "voice" to persons like Brooklyn, providing her the opportunity for literacy, communication, and greater independence.



**BROOKLYN'S DYNAVOX**

3

10. While Brooklyn *was* provided the DynaVox during her elementary school years at Brickey-McCloud, she transitioned to Northshore Elementary for part of 4th grade, then all of 5th Grade. In preparation for this transition, Northshore Elementary wrote "*Call Brickey-McCloud about DynaVox" on top of a March 13, 2014 IEP.

11. However, as Brooklyn continued into 5th grade at Northshore Elementary, Defendants removed the DynaVox, Brooklyn's effective mode of communication. This removal continued into middle school, including 6th through 8th grades at West Valley Middle School.

12. Instead, Defendants used a more rudimentary speech generating device, an early version of "GoTalk." This proved ineffective for Brooklyn in comparison to the more robust speech device to which she had been accustomed.



**SAMPLE GOTALK**

13. The problems with GoTalk were known to and documented by Defendants. Specifically, Defendants' own data collected shows that Brooklyn had only a one percent (1%) accuracy rate with the GoTalk and she experienced technical problems using it.

4

14. Unbeknownst to Plaintiffs, instead of returning to an effective voice output device like DynaVox, Defendants reverted to a picture-exchange communication system (PECs) involving picture-cards. Under the PECs system, Brooklyn would have to hand or point to a physical picture of an item to someone in order to obtain that item. Her audible "voice" was gone.



**SAMPLE PEC CARDS**

15. The PECs system given to Brooklyn is considered "low tech." It does *not* contain audible language (hearing text read aloud) or allow for communication in the manner of an effective AAC device.

16. For Brooklyn, PECs was limiting because she was *already* trained on an effective voice output tool (DynaVox). Whereas PECs is focused more on "I want," "I receive," it does not capture communications such as social interactions, giving an opinion, expressing feelings, asking questions, telling a story, or showing affection.

17. Put simply, Defendants were taking Brooklyn *backwards* with a regressive communication exchange in utilizing GoTalk and PECs, causing her great frustration. Yet it continued throughout middle school, 2015 to 2018.

18. Behavior is a form of communication (including showing frustration). After transitioning to Northshore Elementary and continuing throughout middle school at West Valley Middle School, Brooklyn began punching herself in her own right eye.

19. Brooklyn's punches to her right eye were well known to Defendants. Brooklyn's eye-punching became so frequent, and so violent, in fact, that Brooklyn eventually detached her retina in her right eye. Brooklyn then blinded herself completely. Thus, she lost her sight and disfigured herself while still a child in Knox County's middle school.



**RIGHT EYE: PRE-BLINDNESS**



**RIGHT EYE: POST-BLINDNESS**

6

20. Despite its knowledge of the self-injurious behavior, Defendants did *not* undertake a Functional Behavior Assessment to determine the function behind Brooklyn's self-injurious behavior: Such as Brooklyn feeling she was not listened to; Brooklyn losing her ability to communicate effectively; or other possible functions that must be examined systematically.

21. Nor did Defendants create a Behavior Intervention Plan. In fact, in spite of Brooklyn's self-injurious behaviors, resulting in blindness, Defendants repeatedly documented "NO" on her IEP to Brooklyn having *any* behavior that impeded her learning or that of others. Prior to her blindness, Defendants *never did* conduct a Functional Behavior Assessment or create a Behavior Intervention Plan. These needs were obvious and Defendants' failures to intervene amount to gross, bad faith failures or deliberate indifference.

22. Additionally, Defendants ignored the problems of taking Brooklyn *backwards* with her speech. Thus, Defendants recklessly, or with deliberate indifference, failed to provide appropriate behavioral supports and an effective communication device as a reasonable accommodation to Brooklyn.

23. As a result, Brooklyn must now seek *damages* for the blindness and disfiguration. She is *not* seeking educational programming changes.

24. In fact, *after* Brooklyn's blindness and permanent disfigurement, in the spring of 2018, Defendants finally returned Brooklyn to her effective speech output

system, the DynaVox, and put in place a Behavior Intervention Plan. This eliminated the self-injurious harms at school. But this was too late, for the damages including blindness were already done.

25. Accordingly, this is an action to recover for the personal and physical damages, pain and suffering, and emotional distress experienced by Brooklyn as a result of Defendants' failure to provide Brooklyn with behavioral supports and an effective communication device *as reasonable accommodations and equal opportunity to participate*.

### III. CAUSES OF ACTION

26. The foregoing facts are incorporated. Plaintiffs bring the following causes of action:

### AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

27. Title II of the Americans with Disabilities Act, and its implementing regulation, mandate that no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, such as a public school or school district, or be subjected to discrimination by any such entity. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

28. School districts are required to, among other things, afford students with disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided to other students. 28 C.F.R. § 35.130(b)(1).

29. Similarly, under Section 504, "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). The term "program or activity" includes "all of the operations" of a school system. 29 U.S.C. 794(b)(2)(B). Section 504, too, requires equal access and provision of reasonable accommodations. 29 U.S.C. 794(a); 28 C.F.R. §41.53.

30. Defendants' conduct set forth herein constitutes discrimination because Defendants knowingly refused to allow or enforce the obviously needed reasonable accommodation—behavioral supports and effective speech supports—to enable Brooklyn to obtain equal and meaningful access to education as compared to her non-disabled peers. This resulted in a dangerous educational environment for Brooklyn wherein she blinded herself. Defendants' acts and omissions amount to discrimination on the basis of disability, a denial of equal access, and a failure to accommodate, all conducted with deliberate indifference, and all in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq. and* § 504 of the Rehabilitation Act, 29 U.S.C. § 794, as amended.

31. Defendants are vicariously liable or liable under an agency standard, given their knowledge of the needed reasonable accommodation. Additionally, the conduct was intentional in nature and/or undertaken with deliberate indifference or reckless indifference to Brooklyn's rights to equal access and reasonable accommodation.

32. As a result of Defendants actions and omissions as set forth above, Brooklyn has suffered personal injury, medical expense, lifelong debilitation and disfigurement, humiliation, embarrassment, and pain and suffering. She seeks personal, physical, and compensatory damages, along with her reasonable attorneys' fees and costs.

33. A jury is demanded.

**GILBERT LAW, PLLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com

&

**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus
JESSICA F. SALONUS (TN Bar No. 28158)
139 Stonebridge Boulevard
Jackson, TN 38305
Telephone: 731-300-0970
jsalonus@salonusfirm.com