UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BROOKLYN T., the student, by and through her parent, RACHEL VANDERGRIFF,<br><br>    Plaintiffs,<br><br>v.<br><br>KNOX COUNTY,<br><br>    Defendant. | Case No. 3:20-CV-0005<br>Honorable Laurie J. Michelson |

## OPINION AND ORDER DENYING MOTION TO DISMISS [12]

    Brooklyn T. is a minor with a number of disabilities that substantially limit her ability to communicate, see, hear, and learn. Throughout her education, Brooklyn has received support from an aide, along with some form of assistive communication device. For a number of years, Brooklyn used an assistive communication device called DynaVox, a voice-output, touch-based device. Beginning in fifth grade, Brooklyn's school switched the device that it provided. Plaintiffs (Brooklyn T. and her mother, Rachel Vandergriff) claim that the new device was much less effective and caused Brooklyn so much frustration that she began harming herself by punching herself in the eye. Eventually, Brooklyn's punches detached her retina and caused complete blindness in her right eye. Plaintiffs sued both Knox County, Tennessee, and the county's board of education, alleging that the county is liable for Brooklyn's blindness and disfigurement because Brooklyn's school refused to put in place proper behavioral and speech supports to allow her equal and meaningful access to education. (The board of education has been dismissed from the case (ECF No. 18).) Plaintiffs bring their

suit under the Americans with Disabilities Act and the Rehabilitation Act. Knox County now moves to dismiss the suit, arguing that Plaintiffs are required to exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA).

For the reasons that follow, the Court finds that although the IDEA's exhaustion requirement applies to Plaintiffs' claim, exhaustion is not required because it would be futile.

## I.

Brooklyn has been a student in Knox County public schools since 2014. (ECF No. 12, PageID.32.) From a young age, Brooklyn has been challenged by a number of medical impairments, including an intellectual disability, autism, hearing loss, sight limitations, and cerebral palsy. (*Id.* at PageID.3.) Throughout her childhood she has been mostly non-verbal and used an assistive communication device to communicate. (*Id.*) During elementary school, Brooklyn began using a DynaVox, which is a voice-output, touch-based device that provides the user with "the opportunity for literacy, communication, and greater independence." (*Id.*) Brooklyn also worked with an aide to help with "speech-language services." (*Id.*)

In fifth grade, Brooklyn's school, Northshore Elementary, switched her from the DynaVox to another device called the "GoTalk." (*Id.* at PageID.4.) Plaintiffs describe the GoTalk as a "more rudimentary speech generating device" and argue that "it proved ineffective for Brooklyn in comparison to the more robust speech device to which she had been accustomed." (*Id.*) Plaintiffs state that Brooklyn had a one percent accuracy rate with the GoTalk and that she experienced technical problems when using it. (*Id.*)

After the problems with the GoTalk, the school apparently began using a picture-exchange communication system (PECs), in which Brooklyn pointed to pictures of items to communicate her wishes. (*Id.* at PageID.5.) Plaintiffs refer to these cards as a "low tech"

2

system and state that they cannot capture most types of communication, including "social interactions, giving an opinion, expressing feelings, asking questions, telling a story, or showing affection." (*Id.*)

Throughout Brooklyn's time at West Valley Middle School, the school utilized the GoTalk and PECs with her. (*Id.*) According to Plaintiffs, Brooklyn grew frustrated by her difficulties communicating and began punching herself in her right eye. (*Id.* at PageID.6.) Brooklyn's punches were so frequent and violent that she eventually detached her retina and blinded herself completely in her right eye. (*Id.*)

According to Plaintiffs, when Brooklyn's punching first began, the Defendants "did not undertake a Functional Behavior Assessment to determine the function behind Brooklyn's self-injurious behavior." (*Id.* at PageID.7.) Nor did the school create a Behavior Intervention Plan. (*Id.*)

Plaintiffs argue that the Defendants' failure to intervene in Brooklyn's self-injurious behavior and to provide appropriate behavioral supports and an effective communication device amount to discrimination against Brooklyn on account of her disability, a denial of equal access to education, and a failure to accommodate her disability, in violation of the Americans with Disabilities Act and the Rehabilitation Act. (*Id.*)

Plaintiffs seek money damages for Brooklyn's blindness and disfigurement. (*Id.*) The relief requested does not include educational programming changes. (*Id.*) In the spring of 2018, when Brooklyn was in the ninth grade, Defendants again began using the DynaVox with Brooklyn and put in place a Behavior Intervention Plan. (*Id.* at PageID.7–8.) Plaintiffs state that these changes ended Brooklyn's self-injurious behavior. (*Id.*)

The remaining defendant, Knox County, filed a motion to dismiss for failure to state a claim upon which relief can be granted. (ECF No. 12.) Knox County argues that Plaintiffs were required to exhaust administrative remedies under the IDEA before filing this complaint. Plaintiffs argue that administrative exhaustion is not required, saying it would be futile since the Plaintiffs seek only money damages for Brooklyn's physical injuries. (ECF No. 13.)

## II.

In deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Failure to exhaust can be a ground for dismissal under Rule 12(b)(6) when it is apparent from the face of the complaint that a plaintiff has failed to exhaust and that failure creates a bar to relief. *See Feathers v. McFaul*, 274 F. App'x 467, 469 (6th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 200, 215 (2007)); *Hykes v. Lew*, No. 16-5509, 2017 WL 4863108, at *2 (6th Cir. Mar. 1, 2017) (citing *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003)) ("[F]ailure to exhaust is an appropriate basis for dismissal under Rule 12(b)(6).").

## III.

The IDEA requires states that receive federal funds to guarantee all students receive a "free appropriate public education" (or FAPE) by providing needed special education services to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). The IDEA works in concert with Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and § 504 of the

4

Rehabilitation Act, 29 U.S.C. § 794, which prohibit discrimination against both adults and children with disabilities, in public schools and other settings.

Section 1415(*l*) of the IDEA requires that a plaintiff exhaust the IDEA's administrative dispute resolution procedures before filing an action under the IDEA, or under the ADA, the Rehabilitation Act, or similar laws when her suit seeks relief for the denial of a "free appropriate public education." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752 (2017).

The Court must first determine if the IDEA's exhaustion requirement applies, and if it does, whether Plaintiffs' failure to exhaust may be excused.

### A.

Knox County argues that, even though Plaintiffs have brought claims under only the ADA and the Rehabilitation Act, they must still exhaust administrative remedies required by the IDEA.

The language of the IDEA makes clear that "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws 'seeking relief that is also available under [the IDEA]' must first exhaust the IDEA's administrative procedures." *Fry*, 137 S. Ct. at 746 (quoting 20 U.S.C. § 1415(*l*)). So a plaintiff cannot escape the IDEA's exhaustion requirement simply by bringing her suit under another statute. The Supreme Court has interpreted "relief that is also available under the IDEA" to mean a denial of a "free appropriate public education." *Id.* at 752. To determine whether a suit seeks such relief, the Court looks to the "substance, or gravamen, of the plaintiff's complaint." *Id.* So the key inquiry to determine whether Plaintiffs are required to exhaust is to ask whether the gravamen of their case is a denial of a FAPE.

Determining the gravamen of a complaint is often a challenging task. But the Supreme Court has provided a pair of hypothetical questions for courts to consider to assist with the

task: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 756. When the answer to those questions is yes, the complaint is unlikely to be about the denial of a FAPE; but when the answer is, the complaint probably does concern a FAPE. *Id.*

In this case, the answer to both hypothetical questions is "no."

Plaintiffs try to argue that the answer to the first question is "yes" because a public library or theater would have to provide effective communication aids to persons with a disability. It is true that public entities and places of public accommodation are required to provide "appropriate auxiliary aids and services where necessary to afford individuals with disabilities" equal access. 28 C.F.R. § 35.160(b)(1) (part of the ADA regulations for public entities); *see also* 28 C.F.R. § 36.303 (ADA regulations for places of public accommodation). An appropriate auxiliary aid or service in the context of communication is one that "is necessary to ensure effective communication." *Id.* § 35.160(b)(2). So Plaintiffs could bring a claim for denial of an effective means of communication against a public facility other than a school.

But Plaintiffs' claim in this case is not simply a claim of failure to accommodate Brooklyn's disability by providing an effective means of communication. Instead, Plaintiffs claim that Knox County schools are responsible for Brooklyn's self-inflicted injuries because they did not provide her chosen communication device and because they failed to implement a Behavior Intervention Plan as required under Brooklyn's individual education program (IEP) after school employees began to observe Brooklyn's self-injurious behavior. Plaintiffs

6

emphasize that their claim is only to recover for Brooklyn's physical injuries. So Plaintiffs' claim is inherently tied to Brooklyn's interactions with school employees over an extended time horizon: first, Plaintiffs claim that Brooklyn began hurting herself after school employees made a decision to switch her communication device from one she had been using for years, and second, the alleged duty for the school employees to intervene to stop Brooklyn's self-injurious behavior only arose after the employees observed this behavior a number of times. Further, school officials have a unique relationship with their students that a librarian or theater usher simply does not have. *See, e.g.*, *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995) ("for many purposes school authorities act in loco parentis") (internal citations and alterations omitted). So Brooklyn's claim is unique to the school setting and could not be brought against another public entity.

The same logic applies to the second question. It is clear that an adult, such as a school employee or visitor, could not bring a similar claim. Although a school might be required to provide a device to allow for effective communication for an adult, an adult could not bring a claim for an injury allegedly caused by the school's decision to switch devices or for the school's failure to intervene in the adult's self-injurious behavior caused by that decision. Since Brooklyn's grievance is so tied to her IEP and the decisions made by her aides, teachers, and other school employees, only a student in an educational setting could bring a similar claim.

At bottom, Plaintiffs allege that Knox County is responsible for Brooklyn's injuries because her school denied her an appropriate and effective assistive communication device and failed to put in place a behavioral intervention plan, as required by her IEP. Although Plaintiffs' complaint asks only for damages related to Brooklyn's personal injuries, their claim

7

is inextricably tied with the denial of a FAPE and thus the IDEA's exhaustion requirement applies to this lawsuit.

**B.**

But the finding that the IDEA's exhaustion requirement applies does not end the Court's inquiry. Plaintiffs argue that administrative exhaustion would be futile since they seek only money damages to remedy Brooklyn's physical injuries. (ECF No. 13, PageID.119.) Although Plaintiffs conflate this argument with the threshold question of the applicability of the IDEA, the Court separately analyzes whether the futility exception to the exhaustion requirement applies.

The Supreme Court in *Fry* left open the possibility that exhaustion is not required when "the specific remedy [the student] requests . . . is not one that an IDEA hearing officer may award[.]" 137 S. Ct. at 752 n.4. Although the Sixth Circuit has not yet addressed this open question, the court's pre-*Fry* treatment of this issue still stands. Under Sixth Circuit law, even when the IDEA might otherwise apply, exhaustion is not required "if it would be futile or inadequate to protect the plaintiff's rights." *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000), *amended on denial of reh'g* (May 2, 2000). This approach is also supported by a recent First Circuit case, *Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16 (1st Cir. 2019). In *Doucette*, the court found that even when the IDEA applies under the *Fry* analysis, it is unnecessary to enforce the exhaustion requirement when administrative proceedings would be futile. *Id.* at 31.

The Sixth Circuit has not clearly delineated the bounds of the futility exception. But *Covington* and subsequent cases make clear that the exception is a narrow one; it applies only in unique circumstances when the harm is "wholly in the past" and money damages are the

8

only remedy that can make the student whole. *See Covington*, 205 F.3d at 917; *see also F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014) (finding futility where the "administrative process cannot provide either the type of relief [plaintiff] seeks or any other type of remedy to redress wholly retrospective injuries"); *B.H. v. Portage Pub. Sch. Bd. of Educ.*, No. 08-293, 2009 WL 277051, at *10 (W.D. Mich. Feb. 2, 2009) (suggesting that claims excused from exhaustion include those that "arise from improper discipline, acts of physical abuse by school officials, or other discrete events lying solely in the past and only tangentially related to core educational concerns").

The appropriate remedy for the plaintiff's injuries is an important part of this inquiry because the IDEA's administrative procedures allow for only equitable relief. This relief is limited to "(1) future special education and related services to ensure or remedy a past denial of a FAPE; and (2) reimbursements to parents for education-related expenditures that the state ought to have borne." *Doucette*, 936 F.3d at 32. Monetary damages are not available under the IDEA. *See Covington*, 205 F.3d at 916 (6th Cir. 2000).

But even though money damages are not available under the IDEA, a plaintiff cannot circumvent IDEA exhaustion simply by asking for monetary relief. *Id.* So the most important question is not whether the plaintiff seeks monetary damages, but "whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Holden v. Jensen*, No. 10-697, 2011 WL 4036665 (W.D. Mich. Sept. 12, 2011).

This question of redressability is often closely tied to whether a plaintiff's injuries are completely in the past or whether they can still, to some degree, be ameliorated through educational supports. *Covington* makes clear that the relevant inquiry is whether the IDEA's remedies could provide sufficient relief, "even if it is not the specific relief that the plaintiff

9

requested." 205 F.3d at 917 (internal citation omitted). There are a number of cases in this Circuit in which the courts found that administrative exhaustion was required because the IDEA could still provide some form of remedy when the plaintiff was seeking money damages for personal injury. *See, e.g.*, *Holden v. Jensen*, No. 10-697, 2011 WL 4036665, at *9 (W.D. Mich. Sept. 12, 2011) (finding that remediation of plaintiff's injuries and academic deficiencies would be best addressed by educational professionals through administrative process); *D.M. v. Bd. of Educ. Toledo Pub. Sch.*, 359 F. Supp. 3d 537, 544 (N.D. Ohio 2019) (finding futility not established where plaintiff's harms were not "wholly in the past" because he remained a student, far from graduation age); *P.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 905 (M.D. Tenn. 2018) (holding that plaintiff who sought both money damages and changes to an education plan was required to exhaust).

But that is not the case here. Brooklyn's grievances related to her current IEP have already been fully remedied. As noted, in the spring of 2018, Defendants started using the DynaVox with Brooklyn again and put in place a Behavior Intervention Plan. The only remaining issue is compensation, in the form of money damages, for Brooklyn's permanent injuries and disfigurement. These injuries are "wholly in the past" and cannot be remedied by any change in her IEP or remedial education. If the school is at fault, the only possible remedy is money damages.

There is one additional factor that supports finding exhaustion futile in this case. Although not explicitly addressed in the Sixth Circuit case law, the First Circuit's futility analysis also considers whether "the administrative process would provide negligible benefit to the adjudicating court." *Doucette*, 936 F.3d at 31. Here, Plaintiffs' claims ultimately center around the question of causation: did the actions or inactions of Knox County school staff

10

cause Brooklyn to physically injure herself? Questions of causation are not ones which educational professionals involved in the administrative process are uniquely qualified to address. In fact, "[m]edical causation questions are routinely considered by district courts and juries, assisted by the testimony of medical experts, without the benefit of an administrative record." *Id.* at 33. Here, the traditional tools of civil litigation (discovery, expert witnesses, etc.) will be able to provide the information necessary to adjudicate this case.

Because money damages are truly the only remedy for Brooklyn's wholly retrospective physical injuries, and the administrative process would provide negligible benefit to adjudication, the Court finds that this is one of the rare cases where administrative exhaustion would be futile and thus the failure to exhaust is excused.

## IV.

For the foregoing reasons, the Court DENIES Knox County's motion to dismiss. (ECF No. 12.)

SO ORDERED.

Dated: June 25, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
